UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**ANTHONY R DUPUIS**                          **CASE NO. 2:20-CV-00152**

**VERSUS**                                    **JUDGE TERRY A. DOUGHTY**

**TIMBERLINE HOMES OF LOUISIANA L L C**       **MAGISTRATE JUDGE KAY**

**RULING**

This is an action sounding in tort for personal injuries and damages brought by Plaintiff, Anthony R. Dupuis ("Dupuis"), against Defendant Timberline Homes of Louisiana, LLC (erroneously named "Timberline Homes of Louisiana, Inc.") ("Timberline").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 32] filed by Timberline. Dupuis filed an Opposition [Doc. No. 34]. Timberline has filed a reply to the opposition [Doc. No. 36].

For the following reasons, the motion is **GRANTED**.

**I.     FACTS AND PROCEDURAL HISTORY**

This suit arises out of an incident that occurred on or about August 16, 2018, in the Cooling Springs Residential Community ("Cooling Springs") in Lake Charles, Louisiana. Dupuis allegedly fell from his height-elevated mobile home when attempting to exit, resulting in personal injuries. The mobile home was manufactured by Timberline, and it was delivered to a lot located in Cooling Springs. The home was elevated because of its location in a flood zone, and the height of the prefabricated steps were allegedly not sufficient enough to compensate for the elevation of the mobile home. Because of this, Dupuis fell from the mobile home when he attempted to step out of it.

This suit was originally filed in the 14th Judicial District Court, Parish of Calcasieu, Lake Charles, Louisiana [Doc. No. 1]. It was removed to this Court on January 31, 2020, on the basis of diversity. [*Id*.]

On July 25, 2018, Dupuis executed a Purchase Agreement with Timberline for the purchase of a manufactured, mobile home ("Purchase Agreement") [Doc. No. 32-1]. The mobile home was to be delivered to property owned by Dupuis in Cooling Springs. In addition to the Purchase Agreement, Dupuis also signed a Temporary Steps Important Notice ("Temporary Steps Notice") [Doc. No. 32-1] and a list titled "We Owe You." The Temporary Steps Notice stated:

> Please note that the steps provided with your manufactured home are temporary in nature … By signing, you acknowledge that you fully understand that if your house is not set to standard height that these steps will not accommodate the higher height. It is your responsibility to replace these steps with height-appropriate steps immediately.

[*Id*., p. 24]. Timberline provides mobile homes with temporary steps on a 30-day basis for the customer to access the home. [*Id*.] Furthermore, Timberline allows customers to custom order steps for homes, which would be reflected in the respective purchase agreements as line-item charges [Doc. No. 34-3, p. 5]. There is no indication in the Purchase Agreement between Dupuis and Timberline that above-average height steps would be provided to Dupuis, temporary or not.

Dupuis and Timberline both agree that the home was being placed in a flood zone and that the mobile home would be elevated to an above-average height on the lot in Cooling Springs [Doc. No. 32]. Dupuis purchased and paid in full for his mobile home on July 31, 2018 [*Id*]. Dupuis is disabled, and he was able to pay for his mobile home with funds from the "Tony Dupuis Special Needs Trust" [Doc. No. 34]. The home was delivered to the property at least one week prior to the purchase [Doc. No. 32]. Along with the home, Timberline also delivered two sets of temporary

steps to the home. It was visibly clear that the steps were not high enough for the above-average elevation of the home.

According to Dupuis, Timberline sales consultant Bridgette Webb ("Webb") assisted Dupuis in the purchase of his home [Doc. No. 34]. Her conversations with Dupuis indicated that it was clear that the mobile home would require extra blocking, higher steps, and a raised air conditioner platform to meet the Cooling Springs height requirements [*Id*. p. 2]. However, according to Dupuis' testimony, he told Webb:

> A. "I said, you know they have a height thing."
> She said, "Oh, yeah. **We'll get you a five-step, six-step, whatever we can get that's temporary**."
> I already had a contractor in mind that was going to build the real steps, if you will. But she said, "We have steps on the lot; so don't worry about any of that. And if we don't, we'll get them from our Lafayette or Gonzales, whatever. We make trips all the time; so it won't be any big deal. So don't worry about that."
> …
> Q. So you had a design for the steps in mind?
> A. Oh, absolutely.
> Q. Okay. How many steps did you have in mind?
> A. **The requirement would have been seven.**

[*Id*. at p. 6] (emphasis added).

However, Webb's employment with Timberline terminated on June 29, 2018 [Doc. No. 36]. The Purchase Agreement was executed on July 25, 2018, and the Temporary Steps Notice was signed by Dupuis on July 31, 2018.

According to Dupuis' testimony, he was aware of the need to acquire adequate steps for the home [*Id*.]. He also had a contractor in mind that would have to design the custom steps, and he knew how many steps would be required for his above-average height home. Dupuis' complaint rests on the fact that he was promised a "5-6 step set up," but he instead received "4 temp. steps" [Doc. No. 32, p. 3]. Dupuis acknowledged that this still would not have been sufficient to

3

accommodate the height of his mobile home [*Id.*]. Further, the disparity in height was visibly apparent.

These facts indicate that Dupuis and Timberline both agree that the home was above-average height; that the home would require steps of above-average height; and that Dupuis signed a document indicating that he knew Timberline would not provide the above-average height steps necessary for his home [*Id.*]

Dupuis moved into his home on or about August 16, 2018, which is the day the incident occurred [Doc. No. 34]. Because Dupuis was aware of the fact that the steps were not tall enough to reach his door, he did not utilize the steps to access his home [Doc. No. 32]. Instead, the moving truck lifted him into the home via the liftgate on the truck [Doc. No. 34-6]. Dupuis realized after the movers left that he had forgotten some important items in his vehicle, which he needed that evening. The incident then occurred as Dupuis attempted to exit the home. Dupuis described it as such, "So I literally got on the doorway, on my butt, if you will, tried to—and I went to put my hand on the rail not knowing, holy moly, you know, it's down here. And before you know it, I wake up in the hospital" [Doc. No. 34-6, p. 10].

The issues are fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. SUMMARY JUDGMENT

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

### B. ANALYSIS

Dupuis contends that Timberline's negligence caused his damages. To determine whether a plaintiff should recover on a negligence claim, Louisiana Courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. And Development*, 916 So. 2d 87, 101 (La. 2005). Under the duty risk analysis, Dupuis must establish these five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id*.

In its duty-risk analysis, the Court identifies "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty." *Id.* In other words, in order to show that the owner of the thing was acting negligently, the plaintiff must establish proof that "something about the thing created an unreasonable risk of injury

5

that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." *Teel v. State, Dept. of Transp. and Development,* 681 So.2d 340, 343 (La.1996) (quoted source and emphasis omitted). The Court decides if a risk is reasonable by looking at the facts and circumstances of the case. *Pitre v. Louisiana Tech University,* 673 So.2d 585, 590 (La.1996) (citation omitted). Whether a given risk is unreasonable "requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention." *Id.* The determination of whether a particular risk of harm is reasonable is tied to the facts of the case and is best left to the trier of fact after a trial on the merits. *Sevin v. Parish of Plaquemines,* 901 So.2d 619, 622 (La. App. 4th Cir.2005) (citing *Celestine v. Union Oil Co. of California,* 652 So.2d 1299, 1304 (La.1995)).

In this case, Dupuis maintains that Timberline owed a duty to provide two sets of adequate-height temporary steps to its contracted movers to be placed at the entrance of Dupuis' mobile home to allow him access to the home and to move his things in for "at least a 30-day period." Dupuis further contends that Timberline assumed a duty by delivering steps to Dupuis' mobile home, and that the assumed duty was breached because the steps were of inadequate height.

Timberline argues that it did not act negligently when Dupuis climbed out of his home and fell onto the ground below because Dupuis' claims cannot survive the duty-risk analysis. Timberline maintains that it did not owe a duty to Dupuis because Dupuis knew that his home was being sent to a flood-zone neighborhood, which would require the home to be raised to above-average height; Dupuis knew that he would have to build special steps and told Timberline workers that he already had a contractor in mind to provide those special steps; and that Dupuis signed a "Temporary Steps Notice" in which he agreed that because his home was not set to standard height,

6

the temporary steps provided by Timberline would not be height appropriate and that Dupuis would have to acquire his own height-appropriate steps.

As indicated above, Dupuis signed documents at the closing in which he acknowledged that the steps provided were temporary and that the temporary steps would not accommodate the higher height.

When Dupuis signed the agreement, and before the home was delivered to Cooling Springs, Dupuis knew that the mobile home would be in a flood zone, which required it to be raised at an above-average height. Not only was Dupuis aware of the fact that the home would be raised higher than usual, but it is undisputed that he read and agreed to the terms of the Temporary Steps Notice. It is undisputed that the Purchase Agreement, Temporary Steps Notice, and We Owe You did not have any mention of Timberline creating custom steps for Dupuis for his mobile home.

Dupuis argues that Timberline assumed the duty to provide two (2) sets of adequate height temporary steps to be placed at the mobile home entrance for a period of 30-days. The steps were to be used on a temporary basis to allow access for Dupuis to get in and out of his newly purchased home, for example, to move things into the home. Dupuis further contends that if these temporary steps are not of adequate height, then "there is an array of things that Timberline can do to accommodate that height." Dupuis states that the duty was breached when the temporary steps were of inadequate height.

Although Timberline did have a duty to provide temporary steps, Dupuis knew that the mobile home would be above-average height, and he was told that he would have to procure custom steps that Timberline could not provide for him. If he had contracted with Timberline to have custom, height-appropriate steps provided to him, it would be reflected as a line-item charge in the Purchase Agreement.

7

This Court agrees that Dupuis has failed to satisfy the duty element of the duty-risk analysis and has not proven that Timberline owed a duty to Dupuis or breached any assumed duty. In *Pitre*, the court stated:

> [T]he obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff.

673 So.2d at 591.

Dupuis was aware of the above-average height of his home; he was aware that the temporary stairs that would be provided by Timberline would not be sufficient height because of the elevated foundation of the home; and finally, he was aware that he could not use the steps provided to get in and out of the home due to the fact that the movers lifted him into the home with their equipment on the day he moved into the home.

Dupuis' contention that Timberline assumed a duty by delivering two sets of steps that were of inadequate height fails because of Dupuis' knowledge of the fact that he was supposed to acquire steps of appropriate height and by the fact that the steps were clearly too short to reach the home. The language of the Temporary Steps Notice is clear, and Dupuis' signature and acknowledgment of it are sufficient to show that he knowingly entered an agreement to provide his own steps for the home. Under Louisiana Law, it "is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party has failed to explain it to him. *Aguillard v. Auction Mgmt. Corp.*, 908 So.2d 1, 17 (La. 2005).

By Dupuis' own admission, he knew the temporary steps were inadequate. Dupuis had the opportunity to contract with Timberline to build the proper steps, but he chose not to do so. He

also admits that when he exited the mobile home, he used his own body to scoot out of the doorway. Dupuis stated he had a contractor in mind to build steps of adequate height, but he seemingly did not go through with it. Dupuis signed a Temporary Steps Notice that plainly stated if the home were above-average height, he would have to provide his own height-appropriate steps. It is clear based on these facts that Dupuis did not meet his burden of proof to show that Timberline had a duty and/or assumed a duty to him.

Simply put, Timberline owed no duty to Dupuis, because Dupuis agreed to provide his own steps.

The Court finds that it is not necessary to apply the entire duty-risk analysis test, as it is clear that Dupuis has failed to meet his burden to establish the first element of the analysis, i.e., the duty element.

### III. CONCLUSION

For the reasons set forth above, Defendant Timberline Homes of Louisiana, LLC's ("Timberline") Motion for Summary Judgment [Doc. No. 32] is hereby **GRANTED**. Plaintiff Anthony R. Dupuis' claims against Timberline are **DISMISSED WITH PREJUDICE** in their entirety.

MONROE, LOUISIANA, this 29th day of June 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE